# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### CASE NO.: 1:25-cv-06484

ROLLER RABBIT LLC,

    Plaintiff,

v.

YIULANGDE CLOTHING STORE, ZELBUCK LLC, AMYAAS, ANGELBEE, HINFEL ONLINE, SHENHE ONLINE STORE, SHENZHENSHICHANGYONGSHENG MAOYIYOUXIANGONGSI, UPGARSU, AND XUANFEI,

    Defendants.

---

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ROLLER RABBIT LLC ("Roller Rabbit"), by and through its undersigned counsel, brings this complaint against Defendants YIULANGDE CLOTHING STORE, ZELBUCK LLC, AMYAAS, ANGELBEE, HINFEL ONLINE, SHENHE ONLINE STORE, SHENZHENSHICHANGYONGSHENGMAOYIYOUXIANGONGSI, UPGARSU, and XUANFEI (collectively, "Defendants") who are promoting, selling, offering for sale and distributing goods bearing and using counterfeits and confusingly similar imitations of Roller Rabbit's intellectual property within this district through internet based e-commerce stores on online marketplace(s), like Amazon.com, and in support of its claims, alleges as follows:

### SUMMARY OF THE ACTION

1.  Roller Rabbit brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or

distribution, including by electronic means, of one or more copies of its copyrighted work in violation of 17 U.S.C. § 501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq.*, The All Writs Act, 28 U.S.C. § 1651(a), and the New York General Business Law.

2.      Roller Rabbit brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and the New York General Business Law.

## SUBJECT MATTER JURISDICTION

3.      This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      This court also has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 301 and 15 U.S.C. § 1121.

5.      This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of New York and this district, through internet based e-commerce stores accessible in New York and operating under their Seller IDs.

7.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of New York cause Roller Rabbit injury in New York, and Roller Rabbit's claims arise out of those activities.

8.      Defendants maintain online highly interactive internet-based e-commerce stores on online marketplace(s) where Defendants sell a variety of goods to New York residents and through which New York customers can place orders and receive confirmations.

9.       New York residents can access the defendants' online internet-based e-commerce stores on online marketplace(s) to purchase an endless variety of goods.

10.     New York residents can readily access the defendants' online internet-based e-commerce stores on online marketplace(s). New York residents can browse goods offered for sale by defendants that are available to ship directly to homes in New York, and also are available for pickup in New York at different locations.

11.     Defendants target their business activities toward consumers throughout the United States, including within this district. Defendants promote sales on the internet to New York residents through a variety of methods including search engine optimization (SEO) efforts, follow-up emails to New York residents, and banner ads promoting products that direct customers, including New York residents, to additional information on those products.

12.     Defendants secure direct financial benefit from purchases made by New York residents as well as indirect commercial gain from the web traffic and sales generated to New York residents.

13.     A substantial part of the defendants' revenue derives from their sales to New York customers.

14.     Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of New York cause Roller Rabbit injury in New York, and Roller Rabbit's claims arise out of those activities, pursuant to New York CPLR § 302(a)(1).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

15.     Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

16.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not residents in the United States and therefore there is no district in which an action may otherwise be brought.

17.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

## THE PLAINTIFF

18.     Roller Rabbit is a Delaware limited liability company with its design headquarters located at 603 Greenwich Street, New York, NY 10014.

19.     Founded in 2003 by Roberta Freymann, Roller Rabbit, formerly known as Roberta Roller Rabbit, is a New York-based fashion and lifestyle brand known for featuring playful textile designs in sleepwear, resort wear, bedding, and accessories.

20.     Roller Rabbit places a strong emphasis on quality craftsmanship, working with artisans and high-end materials from around the world, including India, Peru, Italy, Portugal, Kenya, Nicaragua, and the United States. Roller Rabbit's textile designs draw inspiration from a fable discovered on a piece of hand block printed fabric in India, which continues to influence its whimsical spirit and storytelling approach.

21.     As a luxury brand, Roller Rabbit's pajamas retail at approximately $128 per set. For reference, the photographs for Roller Rabbit's genuine Monkey Polo Pajamas can be found below:



22.     Over the past decades, Roller Rabbit has amassed a strong following for its signature textile designs, which are referred to as "The Originals" by the Roller Rabbit's large customer and fan base. One of Roller Rabbit's first signature textile designs in The Originals is Roller Rabbit's copyrighted "Monkey Print." For over 18 years, Roller Rabbit's copyrighted Monkey Print, which features a unique half brick repeat of Roller Rabbit's registered trademark



as a motif, has and continues to operate as a source identifier to Roller Rabbit. The artwork of Roller Rabbit's Monkey Print can be found below:

23.     The mission of Roller Rabbit centers on spreading joy, uplifting others, and making the world a little brighter through its products. As such, a set percentage of each Roller Rabbit purchase is given back to support charities and foundations focused on providing food and shelter for children and animals in need.

24.     Roller Rabbit's products are sold through its website at www.rollerrabbit.com and authorized retailers.

25.     Roller Rabbit offers for sale and sells its products within the state of New York, including this district, and throughout the United States.

26.     Like many other intellectual property rights owners, Roller Rabbit suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

27.     Roller Rabbit is harmed, the consuming public is duped and confused, and the defendants earn substantial profits in connection with the infringing conduct.

28.     In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Roller Rabbit expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

29.     The explosion of infringement over the Internet has created an environment that requires companies like Roller Rabbit to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Roller Rabbit's intellectual property rights, including consumer confusion, the erosion of Roller Rabbit's brand, and the harm to the value of Roller Rabbit's intellectual property.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

## ROLLER RABBIT'S TRADEMARK

30.     Roller Rabbit is the owner of all rights in and to the design trademark (U.S. Trademark No. 7,688,660) consisting of a stylized drawing of a figure wearing a solid short sleeved jumper with both hands up and one leg up standing on one foot with its tail extended out on the figure's left side (hereinafter referred to as the "ROLLER RABBIT Mark"). Through Roller Rabbit's creative imagination and strong branding, this stylized humanoid figure is interpreted as a monkey by Roller Rabbit's customers and fan base.

31.     The information regarding the registration for the ROLLER RABBIT Mark can be seen in the table below.

| ROLLER RABBIT Mark | Reg. No. | IC | First Use | Reg. Date | Exhibit |
|---|---|---|---|---|---|
|  | 7,688,660 | 25 | 1/1/2015 | 2/11/2025 | 1 |

32.     The ROLLER RABBIT Mark is assigned to International Class 25 for coats, dresses, footwear, gowns, hats, jeans, pajamas, pants, shirts, shorts, skirts, sleepwear, swimwear, bibs not of paper, body suits, boxer shorts, coverups, kimonos, robes, sarongs, slips being underclothing, sweaters, baby bottoms, clothing belts, and clothing jackets.

33.     The ROLLER RABBIT Mark is valid and registered on the Principal Register of the United States Patent and Trademark Office. A true and accurate copy of the Trademark Registration can be found **Exhibit 1.**

34.     The ROLLER RABBIT Mark is used in connection with the sale of Roller Rabbit's high-quality products, including bedding and apparel. Examples of Roller Rabbit's use of the ROLLER RABBIT Mark on its products and labels can be seen below:






9

35.     The ROLLER RABBIT Mark has been used in interstate commerce to identify and distinguish Roller Rabbit's high-quality and unique bedding and apparel for an extended period of time.

36.     The ROLLER RABBIT Mark has been used by Roller Rabbit long prior in time to Defendants' use of copies of the Mark.

37.     The ROLLER RABBIT Mark has never been assigned or licensed to any of the Defendants.

38.     The ROLLER RABBIT Mark is a symbol of Roller Rabbit's quality goods, reputation and goodwill and has never been abandoned.

39.     Roller Rabbit has carefully monitored and policed the use of the ROLLER RABBIT Mark.

40.     The ROLLER RABBIT Mark is well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and has been for many years.

41.     Roller Rabbit has expended substantial time, money and other resources developing, advertising and otherwise promoting the ROLLER RABBIT Mark in connection with Roller Rabbit's products.

42.     Roller Rabbit has extensively used, advertised, and promoted the ROLLER RABBIT Mark in the United States in association with the sale of high-quality and unique apparel.

43.     As a result of Roller Rabbit's efforts, members of the consuming public readily identify merchandise bearing or sold under the ROLLER RABBIT Mark as being high-quality and unique apparel sponsored and approved by Roller Rabbit.

44.     Accordingly, the ROLLER RABBIT Mark has achieved secondary meaning as an identifier of high-quality and unique bedding and apparel.

45.     Genuine products bearing or sold under the ROLLER RABBIT Mark are widely advertised and promoted by Roller Rabbit, its authorized distributors, and unrelated third parties via the Internet.

46.     Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Roller Rabbit's overall marketing and consumer education efforts.

47.     Thus, Roller Rabbit expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

48.     Roller Rabbit's SEO strategies allow Roller Rabbit and its authorized retailers to fairly and legitimately educate consumers about the value associated with Roller Rabbit's products and the goods marked with the ROLLER RABBIT Mark.

## ROLLER RABBIT'S COPYRIGHT

49.     Roberta Herbstein, or otherwise known as Roberta Freymann, is the author of the copyright for the two-dimensional artwork titled "Roberta Roller Rabbit" (hereinafter referred to as the "Monkey Print"). The one colorway of the Monkey Print artwork can be seen below:



50.     The Monkey Print was registered with the United States Copyright Office on March 1, 2007 and was assigned Copyright Registration No. VAu 735-697. A true and accurate copy of the registration is attached as **Exhibit 2**.

51.     On February 12, 2015, Roberta Herbstein assigned the rights to the Monkey Print to Roberta Roller Rabbit, LLC, which was recorded with the U.S. Copyright Office on December 1, 2016. A true and accurate copy of the Certificate of Recordation is attached as **Exhibit 3**.

52.     On June 27, 2020, Roberta Roller Rabbit, LLC changed its name to Roller Rabbit LLC. A true and accurate copy of the Certificate of Amendment is attached as **Exhibit 4**.

53.     At all relevant times Roller Rabbit was the owner of the Monkey Print.

54.     The Monkey Print is protected by copyright but is not otherwise confidential, proprietary, or trade secret.

## DEFENDANTS

55.     Defendants are the following individuals or entities who are currently known to Roller Rabbit only by their Seller ID on Amazon.com as follows:

| Company Name Provided Online | Seller Name | Seller ID | Physical Address provided online |
|---|---|---|---|
| chengdushiqiuxukui maoyiyouxiangongsi | HINFEL ONLINE | A1ZCBATCSPCNL8 | 天府新区华阳街道华府大道一段1号2栋1单元14层12号成都四川610213 CN |
| Puningshi Liusha Chuangrui Fuzhuangdian | Zelbuck LLC | ADSVE57WZXOI7 | 瑞安里东片第3街101号首层流沙北街道南园村普宁市广东515300 CN |

| Company Name Provided Online | Seller Name | Seller ID | Physical Address provided online |
|---|---|---|---|
| Longyanyashuwangluokejiyouxiangongsi | AngelBee | A8HXGBMK7WIUP | 侨民路西安安置小区8号楼608龙岩市新罗区西城街道福建364000<br>CN |
| Shenzhen Xuanfei Technology Co.Ltd | XUANfei | A1D64U5PWP8IRD | 坂田街道五和社区和瑚北路228号301-4深圳市龙岗区广东省518129<br>CN |
| weifanghongyidianzi kejiyouxiangongsi | AMYAas | A2YC47U0COT1L3 | 兴安街道谢家营村139号潍坊市安丘市山 |
| shenzhenshichengzuk ejiyouxiangongsi | UPGARSU | A732V2LAZV0XD | baoanquhangchengda daosanweibeilu8hao9 05shenzhenGuangdo ng518000<br>CN |
| SHENHE INTERNATIONAL HOLDING GROUP CO.,LIMITED | SHENHE ONLINE STORE | A2OGAT8ED4KZFV | 300 LOCKHART ROAD FLAT/RM A 12/F ZJ 300 WAN CHAI HONG KONG 999077<br>HK |
| jiujiangshichuantidia nzishangwuyuxiang ongsi | Yiulangde Clothing Store | A3HP4MDM2WLPF7 | 经开区顺意路9号跨境电商产业园9-K060九江市江西省332099<br>CN |

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

| Company Name Provided Online | Seller Name | Seller ID | Physical Address provided online |
|---|---|---|---|
| shenzhenshichangyongshengmaoyiyouxiangongsi | shenzhenshichangyongshengmaoyiyouxiangongsi | A3BAQYJ97L5P4T | 福田区福田街道岗厦社区福华三路8号恒运豪庭1栋16A深圳市广东省518000 CN |

56. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

57. Defendants are individuals and/or business entities, each of whom, upon information and belief, either resides and/or operates in foreign jurisdictions, redistributes products from the same or similar sources in those locations, and/or ships their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

58. Defendants are engaged in business in New York but have not appointed an agent for service of process.

59. Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

60. Defendants target their business activities toward consumers throughout the United States, including within this district, through their simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

61. Defendants are the past and present controlling forces behind the sale of products infringing Roller Rabbit's intellectual property rights as described herein operating and using at least the Seller IDs.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

62.     Defendants directly engage in unfair competition with Roller Rabbit by advertising, offering for sale, and selling goods bearing or using Roller Rabbit's Monkey Print and identical or confusingly similar trademarks to the ROLLER RABBIT Mark to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Roller Rabbit.

63.     Defendants purposefully direct some portion of their illegal activities towards consumers in the state of New York through the advertisement, offer to sell, sale, and/or shipment of Counterfeit Goods into the State.

64.     Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the marketplace where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

65.     Upon information and belief, Defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

66.     Upon information and belief, Defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of Roller Rabbit's intellectual property rights unless preliminarily and permanently enjoined.

67.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Roller Rabbit and others.

68.     Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Roller Rabbit's intellectual property rights are essential

components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Roller Rabbit.

69.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Roller Rabbit's intellectual property rights, including Roller Rabbit's right to use and license its trademark and copyright.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

70.     Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Roller Rabbit's intellectual property within this district.

71.     Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.

72.     Joinder of the defendants is permitted because Roller Rabbit asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

73.     Joinder of the defendants serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Roller Rabbits, Defendants, and this Court.

74.     Joinder of the defendants will not create any unnecessary delay nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Roller Rabbit and Defendants alike.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

75.     Joinder of the defendants is procedural only and does not affect the substantive rights of any defendant.

76.     Roller Rabbit's claims against the defendants are all transactionally related.

77.     Roller Rabbit is claiming counterfeiting and piracy against defendants of Roller Rabbit's intellectual property rights.

78.     The actions of all Defendants cause indivisible harm to Roller Rabbit by Defendants' combined actions engaging in similar infringing conduct when each is compared to the others.

79.     All Defendants' actions are logically related. All Defendants are all engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the defendants can easily conceal to avoid any real liability for their actions.

80.     Upon information and belief, all Defendants are located in foreign jurisdictions, mostly China.

81.     All Defendants undertake efforts to conceal their true identities from Roller Rabbit in order to avoid detection for their illegal counterfeiting activities.

82.     All Defendants have the same or closely related sources for their infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain infringing products from the same upstream sources.

83.     All Defendants take advantage of a set of circumstances that the anonymity and mass reach the internet affords to sell Counterfeit Goods across international borders and violate Roller Rabbit's intellectual property rights with impunity.

84. All Defendants have registered their Seller IDs with a small number of online platforms for the purpose of engaging in counterfeiting.

85. Defendants operate online stores that offer shipping to the United States, including New York, and accept payment in U.S. dollars.

86. All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

87. All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their infringing activities.

88. All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Roller Rabbit's anti-counterfeiting efforts are discovered or Roller Rabbit obtains a monetary award.

89. All Defendants violated one or more of the Roller Rabbit's intellectual property rights in the United States by the use of common or identical methods.

90. All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

91. The Defendants are operating multiple internet storefronts and online marketplace seller accounts using different Seller IDs. As a result, there are more Seller IDs than there are Defendants, a fact that will emerge in discovery.

92. Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of infringements of Roller Rabbit's intellectual property rights are essential components of

Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Roller Rabbit.

93. Defendants are using infringements of Roller Rabbit's intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Roller Rabbit's legitimate marketplace and intellectual property rights at Roller Rabbit's expense.

94. Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Roller Rabbit's economic interests in the state of New York and causing Roller Rabbit harm and damage within this jurisdiction.

95. The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Roller Rabbit's intellectual property rights and the destruction of the legitimate market sector in which it operates.

96. Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Roller Rabbit's intellectual property rights, including Roller Rabbit's exclusive right to use and license such intellectual property rights.

## DEFENDANTS' INFRINGING ACTIVITIES

97. Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies or imitations of Roller Rabbit's product in interstate commerce that are infringements of Roller Rabbit's intellectual property rights ("Counterfeit Goods") through at least the Internet based e-commerce stores operating under the Seller IDs. A comparison of Roller Rabbit's genuine product and one of the Defendant's infringing products can be found below:

**Roller Rabbit's Monkey Polo pajamas**

(Sells for approximately $128)

**Defendant HINFEL ONLINE's infringing product**
(Sells for $19.99)




98.     Defendants are bearing or using infringements of Roller Rabbit's intellectual property to initially attract online customers and drive them to Defendants' e-commerce stores operating under the Seller IDs.

99.     Roller Rabbit has used Roller Rabbit's intellectual property extensively and continuously before Defendants began offering goods bearing or using unauthorized reproductions or derivative works of Roller Rabbit's intellectual property.

100. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods without authority to use Roller Rabbit's intellectual property.

101. Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

102. In so advertising their stores and products, Defendants improperly and unlawfully use reproductions or versions of Roller Rabbit's intellectual property without Roller Rabbit's permission.

103. As part of their overall infringement scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use Roller Rabbit's intellectual property.

104. Specifically, Defendants are bearing or using infringements of the Roller Rabbit's intellectual property in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Roller Rabbit's goods and goods sold by Roller Rabbit's competitors online.

105. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Roller Rabbit's genuine goods.

106. Defendants are causing individual, concurrent and indivisible harm to Roller Rabbit and the consuming public by (i) depriving Roller Rabbit and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Roller Rabbit's

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Roller Rabbit's business and its intellectual property assets, and (iii) increasing Roller Rabbit's overall cost to market its goods and educate consumers via the Internet.

107. Defendants are concurrently conducting and targeting their infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

108. As a result, Defendants are defrauding Roller Rabbit and the consuming public for Defendants' own benefit.

109. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Roller Rabbit's ownership of the Roller Rabbit's intellectual property, including its right to use and license such intellectual property and the goodwill associated therewith.

110. Defendants' use of the Roller Rabbit's intellectual property, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Roller Rabbit's consent or authorization.

111. Defendants are engaging in the above-described illegal infringing and counterfeiting activities knowingly and intentionally or with reckless disregard or willful blindness to Roller Rabbit's rights.

112. If Defendants' intentional infringing and counterfeiting activities are not preliminarily and permanently enjoined by this Court, Roller Rabbit and the consuming public will continue to be harmed.

113. Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing activities connected to their Seller

IDs and any other alias, e-commerce stores, or seller identification names being used and/or controlled by them.

114.    Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Roller Rabbit.

115.    Roller Rabbit is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Roller Rabbit's intellectual property rights.

116.    The harm and damage sustained by Roller Rabbit has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

117.    Defendants have sold their infringing products in competition directly with Roller Rabbit's genuine products.

118.    Roller Rabbit should not have any competition from Defendants because Roller Rabbit never authorized Defendants to use Roller Rabbit's intellectual property.

119.    Roller Rabbit has no adequate remedy at law.

### COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

120.    Roller Rabbit incorporates the allegations of paragraphs 1 through 119 of this Complaint as if fully set forth herein.

121.    This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the ROLLER RABBIT Mark in commerce in connection with the promotion, advertisement, distribution, and offering for sale and sale of the Counterfeit Goods.

122.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the ROLLER RABBIT Mark.

123.     Defendants are continuously infringing and inducing others to infringe the ROLLER RABBIT Mark by using it to advertise, promote, sell, and offer to sell counterfeit and Counterfeit Goods.

124.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

125.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Roller Rabbit and are unjustly enriching Defendants with profits at Roller Rabbit's expense.

126.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the ROLLER RABBIT Mark in violation of Roller Rabbit's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

127.     Roller Rabbit has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

128.     If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II – COMMON LAW TRADEMARK INFRINGEMENT

129.     Roller Rabbit incorporates the allegations of paragraphs 1 through 119 of this Complaint as if fully set forth herein.

130. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing or sold under the ROLLER RABBIT Mark.

131. Roller Rabbit is the owner of all common law rights in and to the ROLLER RABBIT Mark.

132. Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the ROLLER RABBIT Mark.

133. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing or sold under the ROLLER RABBIT Mark.

134. Roller Rabbit has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT III – COPYRIGHT INFRINGEMENT

135. Roller Rabbit incorporates the allegations of paragraphs 1 through 119 of this Complaint as if fully set forth herein.

136. Pursuant to 17 U.S.C. § 411 (a), Roller Rabbit owns a valid copyright in the Monkey Print.

137. Roller Rabbit has complied in all respects with the Copyright Act of the United States and all other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

138.     Pursuant to 17 U.S.C. §106, Roller Rabbit has the exclusive rights and privileges to reproduce, prepare derivative works, distribute copies, and import copies into the United States of Roller Rabbit's Monkey Print.

139.     Defendants directly infringed Roller Rabbit's exclusive rights in its copyright.

140.     Defendants copied, displayed, and distributed Counterfeit Goods bearing or using Roller Rabbit's Monkey Print and/or derivative works based upon Roller Rabbit's Monkey Print in violation of 17 U.S.C. § 501 and Roller Rabbit's exclusive rights under 17 U.S.C. §106.

141.     Defendants' conduct constitutes willful and direct copyright infringement of Roller Rabbit's Monkey Print.

142.     Defendants profited from the direct infringement of the exclusive rights of Roller Rabbit's Monkey Print under the Copyright Act.

143.     On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

144.     Defendants performed the acts alleged in the course and scope of its business activities.

145.     On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

146.     Roller Rabbit has been damaged.

147.     The harm caused is irreparable.

148.     Roller Rabbit is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

149. As a direct and proximate result of Defendants' infringement of Roller Rabbit's exclusive rights, Roller Rabbit is entitled to actual damages and statutory damages, as well as Defendants' profits pursuant to 17 U.S.C. § 504(b) and (c).

150. Roller Rabbit is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

## COUNT IV – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

151. Roller Rabbit incorporates the allegations of paragraphs 1 through 119 of this Complaint as if fully set forth herein.

152. Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of the ROLLER RABBIT Mark have been widely advertised and offered for sale throughout the United States via their Internet based e-commerce stores.

153. Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of the ROLLER RABBIT Mark are virtually identical in appearance to Roller Rabbit's genuine goods.

154. Defendants' Counterfeit Goods are made with lower quality materials as comparted to Roller Rabbit's goods.

155. Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

156. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Roller Rabbit's detriment.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

157.     Defendants have authorized infringing uses of the ROLLER RABBIT Mark in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

158.     Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-Counterfeit Goods.

159.     Defendants are using counterfeits and infringements of the ROLLER RABBIT Mark in order to unfairly compete with Roller Rabbit and others for space within organic search engine results and social media results, thereby jointly depriving Roller Rabbit of a valuable marketing and educational tool which would otherwise be available to Roller Rabbit and reducing the visibility of Roller Rabbit's genuine goods on the internet and across social media platforms.

160.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

161.     Roller Rabbit has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

162.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Roller Rabbit will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT V – COMMON LAW UNFAIR COMPETITION AGAINST ALL DEFENDANTS

163.     Plaintiff incorporates the allegations of paragraphs 1 through 119 of this Complaint as if fully set forth herein.

164.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing or using marks that are virtually identical to the Roller Rabbit Marks in violation of  New York's common law of unfair competition.

165.     Defendants' activities complained of herein constitute unfair methods of competition.

166.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using or bearing infringements of the Roller Rabbit Mark.

167.     Defendants are also using infringements of the Roller Rabbit Mark to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

168.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' individual seller stores at Walmart.com and all products sold therein by their use of the Roller Rabbit Mark.

169.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT VI – DECEPTIVE OR UNFAIR TRADE PRACTICES IN VIOLATION OF NEW YORK LAW

170.     Roller Rabbit incorporates the allegations of paragraphs 1 through 119 of this Complaint as if fully set forth herein.

171.     The New York General Business Law ("NYGBL") broadly declares in §349 that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

172.     The Integrity, Notification, and Fairness in Online Retail Marketplaces for Consumers Act (INFORM Act) became effective on June 27, 2023, with the primary goal of increasing transparency in online marketplace transactions.

173.     The INFORM Act is consumer oriented and its violation results in actions that are deceptive or materially misleading to the reasonable consumer.

174.     The INFORM Act requires online marketplaces to collect, verify, and disclose specific information about high-volume third-party sellers to protect consumers from counterfeit, unsafe, and stolen goods.

175.     The INFORM act requires marketplaces to display the business name, physical address, and contact information on product listing pages or in order confirmations for sellers with a gross annual revenue of $20,000 within the past two years. This transparency requirement directly addresses consumer protection concerns by enabling buyers to identify and contact sellers, thereby deterring fraudulent activities.

176.     The INFORM Act mandates that online marketplaces collect bank account information, contact information, and tax identification numbers from these sellers.

177.     All the Defendants in this action meet the definition of "high-volume third-party sellers" with annual gross revenues of $20,000 or more.

178.     The defendants in this action violated the INFORM Act by failing to provide the required information or providing false information.

179.     The INFORM Act explicitly grants enforcement authority to the FTC and violations of the INFORM Act are statutorily defined as "unfair or deceptive acts or practices" under Section 5 of the FTC Act.

180.     The FTC's authority encompasses practices that are "likely to mislead" consumers, even if no actual deception occurs; failure to disclose pertinent facts that could materially affect consumer purchasing decisions constitutes a deceptive practice under established FTC precedent.

181.     When marketplace sellers, such as the defendants in this case, violate INFORM Act requirements by failing to provide required information or providing false information, they create the precise consumer harm the Act was designed to prevent. Such violations can mislead

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

consumers about seller identity, impede communication regarding defective products, and facilitate the sale of counterfeit or stolen merchandise.

182.    The Defendants' violations of the INFORM Act serves as a predicate violation for Roller Rabbit's state law unfair or deceptive practice claims.

183.    The defendants' violations of the INFORM Act were a proximate cause of harm to Roller Rabbit because the violations led to sales by Defendants under circumstances where, *inter alia*, consumers cannot identify sellers or verify their legitimacy; absent required contact information, consumers could not address product defects or seek remedies; non-compliance with the INFORM Act facilitates criminal activity and counterfeit sales; material omissions about seller identity affect consumer choice.

184.    As a direct and proximate result of Defendants' unfair or deceptive trade practices, Roller Rabbit suffered and will continue to suffer loss of reputation among its purchasers and potential purchasers, and defendants will continue to unfairly acquire income, profits, and goodwill.

185.    Roller Rabbit has been damaged.

186.    The damage to Roller Rabbit is irreparable.

187.    Unless enjoined, Defendants' unfair and deceptive practices will continue to deceive the public and injure competition.

WHEREFORE, PLAINTIFF ROLLER RABBIT demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against DEFENDANTS YIULANGDE CLOTHING STORE, ZELBUCK LLC, HINFEL ONLINE, SHENHE ONLINE STORE, SHENZHENSHICHANGYONGSHENGMAOYIYOUXIANGONGSI, UPGARSU, ANGELBEE, AMYAAS, and XUANFEI as follows:

a.  Entry of temporary, preliminary, and permanent injunctions pursuant to the Copyright Act and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from copying, displaying, distributing or creating derivative works of Roller Rabbit's copyrighted Monkey Print.

b.  Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Infringing Goods; from infringing, counterfeiting, or diluting the ROLLER RABBIT Mark; from using the ROLLER RABBIT Mark, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Roller Rabbit; from falsely representing themselves as being connected with Roller Rabbit , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of

defendants, are in any way endorsed by, approved by, and/or associated with Roller Rabbit; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the ROLLER RABBIT Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Roller Rabbit, or in any way endorsed by Roller Rabbit and from offering such goods in commerce; and from engaging in search engine optimization strategies using colorable imitations of Roller Rabbit's name or trademark and from otherwise unfairly competing with Roller Rabbit.

c. Entry of a Temporary Restraining Order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits that copy, display, distribute or use derivative works of Roller Rabbit's copyrighted Monkey Print.

d.  Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. § 503.

e.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Roller Rabbit's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods using infringements of the Monkey Print.

f.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Roller Rabbit's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, inter alia, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods using infringements of Monkey Print via the e-commerce stores operating under the Seller IDs, and upon Roller Rabbit's request, any other listings and images of goods using infringements of the Monkey Print associated with any ASIN linked to the same sellers or linked to any other alias seller identification names being

**SRIPLAW**

**CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS**

used and/or controlled by Defendants to promote, offer for sale and/or sell goods using infringements of the Monkey Print.

g. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Roller Rabbit's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant using infringements of the Monkey Print and ROLLER RABBIT Mark in his inventory, possession, custody, or control, and surrender those goods to Roller Rabbit.

h. Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

i. Entry of an Order requiring Defendants to account to and pay Roller Rabbit for all profits and damages resulting from Defendants' copyright infringement, or statutory damages (at Roller Rabbit's election), for all infringements involved in the action, with respect to any one work, for which any one Defendant is liable individually, or for which Defendants are liable jointly and severally with another, in a sum of not less than $750 or more than $30,000 as the Court considers just pursuant to 17 U.S.C. §504(c)(1), or to the extent the Court finds that infringement was committed

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK ◆ INDIANA ◆ TEXAS

willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2).

j. Entry of an Order requiring Defendants to account to and pay Roller Rabbit for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Roller Rabbit be trebled, as provided for under 15 U.S.C.§ 1117, or, at Roller Rabbit's election, that Roller Rabbit be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

k. Entry of an award pursuant to 17 U.S.C. § 505 of Roller Rabbit's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action.

l. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Roller Rabbit's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

m. Entry of an award pursuant to the state unfair or deceptive practice statutes sued upon for actual and/or statutory damages, Roller Rabbit's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action.

n. Entry of an Order that, upon Roller Rabbit's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and

affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Roller Rabbit in partial satisfaction of the monetary judgment entered herein.

o.  Entry of an award of pre-judgment interest on the judgment amount.

p.  Entry of an Order for any further relief as the Court may deem just and proper.

DATED: August 6, 2025

Respectfully submitted,

*/s/  Debbie C. Yang*
DEBBIE C. YANG
New York Bar Number: 6087050
debbie.yang@sriplaw.com

JOEL B. ROTHMAN
New York Bar Number: 2459576
joel.rothman@sriplaw.com

**SRIPLAW, P.A. – New York Office**
41 Madison Avenue, 25th Floor
New York, NY 10010
561.404.4350 – Telephone
561.404.4353 – Facsimile

**SRIPLAW, P.A. – Florida Office**
21301 Powerline Road, Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff ROLLER RABBIT LLC*